# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

MADISON HEDRICK                                                                PLAINTIFF

v.                                    Case No. 4:18-cv-944-KGB

UNIVERSITY OF ARKANSAS FOR
MEDICAL SCIENCES by and through
THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS; and
DR. APPALANAIDU SASAPU                                                        DEFENDANTS

# ORDER

Plaintiff Madison Hedrick brings this action against defendant Dr. Appalanaidu Sasapu alleging a state law claim of outrage and against the University of Arkansas for Medical Sciences by and through the Board of Trustees of the University of Arkansas (collectively, "UAMS") alleging a claim of sex discrimination and retaliation under Title IX, 20 U.S.C. § 1681(a). UAMS filed a motion to dismiss Ms. Hedrick's complaint which is pending before the Court (Dkt. No. 8). Ms. Hedrick filed a motion for extension of time to file her response in opposition to UAMS's motion (Dkt. No. 11), which the Court grants. The Court considers her response to be timely filed and has considered her response in ruling on the pending motion (Dkt. No. 12). UAMS filed a reply in support of its motion to dismiss (Dkt. No. 14). For the reasons discussed below, the Court grants UAMS's motion to dismiss Ms. Hedrick's claims against UAMS and declines to exercise supplemental jurisdiction over the state law claim of outrage Ms. Hedrick alleges against Dr. Sasapu (Dkt. No. 8).

   I.     **Background**

   The following facts are taken from Ms. Hedrick's complaint. In her complaint, Ms. Hedrick states she was an employee of UAMS working as an editor and writer in the Science

Communications Group during all relevant time periods (Dkt. No. 1, at 1). The complaint states that Dr. Sasapu is a hematologist practicing medicine at the UAMS Little Rock campus (*Id.*). Ms. Hedrick alleges that she saw Dr. Sasapu to treat a medical condition and that, during three separate exams performed without a nurse or other female present, he "touched [her] in a sexually inappropriate manner . . . ." (*Id.*, at 2). The day after the third exam, March 29, 2018, Ms. Hedrick reported the behavior in detail to UAMS Human Resources *via* a letter, which is attached to the complaint (*Id.*, at 2, 5-7).

Attached to the complaint is a printout of the letter Ms. Hedrick filed with the "Senior HR Director of Employee Relations" on March 29, 2018 (Dkt. No. 1, at 5-7). *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). The letter describes her employment at UAMS and Dr. Sasapu's allegedly inappropriate behavior during her three exams with him (*Id.*). Ms. Hedrick's letter alleges that Dr. Sasapu, during the first exam, "probe[d] under her clothing" without anyone else present, asked her to disrobe but did not leave the examining room until asked, rubbed her upper leg and thigh, touched her breasts, and squeezed her nipples (*Id.*, at 5-6). Ms. Hedrick's letter further alleges that Dr. Sasapu, during the second exam, raised up her dress, reached his hands down Ms. Hedrick's pants and various other garments, and touched her labia to "look for lymph nodes." (*Id.*, at 6). Ms. Hedrick's letter explains that she then sat up, at which point Dr. Sasapu offered to get a nurse or drape if Ms. Hedrick felt uncomfortable (Dkt. No. 1, at 6). A nurse then entered the room and "seemed upset" and "mentioned something about how the room was not in use and there was not supposed to be a patient in there . . . ." (*Id.*). Ms. Hedrick's letter states that she then sought out a physician at Arkansas Children's Hospital ("ACH") to treat her condition instead (*Id.*). Ms. Hedrick did not schedule a third exam with Dr. Sasapu; instead, a nurse told her that Dr. Sasapu

wanted to see her before he would refer her to another provider (*Id*.). Ms. Hedrick's letter states that she went to her third exam and that she "recorded the contact he had with me . . . ." (Dkt. No. 1, at 7). Ms. Hedrick's letter asserts that, during the third exam, Dr. Sasapu "lay [Ms. Hedrick] back and forcefully unbuttoned [her] dress and then began to touch and look at [her] breasts despite [her] telling him there was nothing wrong with [her] breasts." (*Id*.).

A representative of UAMS responded *via* letter on April 24, 2018, and a copy of that letter is also attached to the complaint (*Id*., at 8). UAMS's response letter states that, on April 5, 2018, Ms. Hedrick's letter was forwarded to Hospital Administration "because [UAMS] consider[ed] the concerns [Ms. Hedrick] raised to be a grievance related to the medical care you received rather than a human resources issue." (*Id*.). The letter further states that "a peer review committee was assigned to investigate your concerns." (Dkt. No. 1, at 8). According to UAMS's letter, the committee's investigation included a review of Ms. Hedrick's letter, the provided videotape of Ms. Hedrick's third exam, and interviews with Dr. Sasapu and other employees who may have had relevant information (*Id.*). The committee determined that the physical exams Dr. Sasapu performed were appropriate for the symptoms Ms. Hedrick had described (*Id.*).

In her complaint, Ms. Hedrick asserts that she "still had to see Dr. Sasapu on the UAMS campus" and "has been forced to find alternate medical care for her conditions." (*Id*., at 2). Furthermore, Ms. Hedrick's complaint alleges that, because her complaints about inappropriate sexual behavior on the part of Dr. Sasapu were dismissed and not believed, she has been constructively discharged from her position at UAMS (Dkt. No. 1, at 2).

## II. Motion To Dismiss

For the following reasons, the Court concludes that Ms. Hedrick's complaint fails to state a claim upon which relief may be granted. Accordingly, the Court grants UAMS's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 8).

### A. Standard Of Review

Federal Rule of Civil Procedure 8(a) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). A complaint should be dismissed for failure to state a claim under Federal Rule

4

of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *In re K-tel Int'l Sec. Litig.*, 300 F.3d 881, 904 (8th Cir. 2002) (citations omitted).

**B.     Discussion**

The Court concludes that Ms. Hedrick's complaint fails to state both a claim of sex discrimination and a claim of retaliation under Title IX, 20 U.S.C. § 1681(a) against UAMS upon which relief can be granted. Title IX prohibits sex discrimination by educational programs that are recipients of federal funds. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

In *Jackson*, the Supreme Court held that Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination and authorizes private parties to seek monetary damages for intentional violations of Title IX. *Id.*; *see Franklin v. Gwinnett Cty. Public Schools*, 503 U.S. 60, 76 (1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690-93 (1979). The Supreme Court recognized that the private right of action under Title IX encompasses intentional sex discrimination where a recipient of federal funds is deliberately indifferent to a teacher's sexual harassment of a student or sexual harassment of a student by another student and where a recipient of federal funds retaliates against an individual because that individual complained about sex discrimination. *Jackson*, 544 U.S. at 171-73 (citing *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290-91 (1998); *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 642 (1999)). Additionally, the Supreme Court recognized an implied right of action for "[e]mployees who directly participate in federal programs or who directly benefit from federal grants, loans, or

5

contracts" when challenging the validity of administrative regulations that discriminate on the basis of sex in employment practices. *See North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 520 (1982).

Here, Ms. Hedrick's complaints against Dr. Sasapu center around his medical examinations of her in a clinical setting; her allegations involve conduct that occurred between a doctor and patient. Ms. Hedrick was not interacting with Dr. Sasapu in an educational or employment context. As a result, UAMS argues that Title IX does not apply here. *See* 20 U.S.C. § 1681(a). Even if the Court views Ms. Hedrick's complaint as one of employment discrimination against UAMS, currently, there is a circuit split on the issue of whether Title IX provides a private cause of action for claims of employment discrimination. *See Kelley v. Iowa State Univ. of Science and Tech.*, 311 F. Supp. 3d 1051, 1064 n.6 (S.D. Iowa 2018) (examining this split). The Third and Sixth Circuits have held that employment discrimination claims may be pursued under both Titles VII and IX. *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 560 (3d Cir. 2017); *Ivan v. Kent State Univ.*, Case No. 94-4090, 1996 WL 422496, at *2 n.10 (6th Cir. July 26, 1996) (per curiam) (unpublished table decision). The Fifth and Seventh Circuits have held that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995); *accord Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862 (7th Cir. 1996) (abrogated in part on other grounds by *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 251 (2009)). The Court notes that *Jackson* was decided after both the Fifth Circuit's *Lakoski* decision and the Seventh Circuit's *Waid* decision. *See Kelley*, 311 F. Supp. 3d at 1065.

The Eighth Circuit Court of Appeals has not directly addressed the issue of whether Title IX provides a private right of action for an employee claiming sex discrimination against another

6

employee.  Although the Eighth Circuit has resolved cases involving such claims, the Eighth Circuit has not yet directly addressed the issue of a private right of action.  In *Brine v. University of Iowa*, the Eighth Circuit remarked that "to the degree [a plaintiff] relies upon teaching conditions, such as course assignments," a Title IX claim "merely duplicates" a Title VII claim. *Brine v. Univ. of Iowa*, 90 F.3d 271, 276 (8th Cir. 1996) (quoting *O'Connor v. Peru State College*, 781 F.2d 632, 642 n.8 (8th Cir. 1986)).  In *Brine*, however, the university did not "challenge the proposition that a private right of action exists under Title IX;" therefore, the Eight Circuit did not directly address the issue. 90 F.3d at 276.  In *O'Connor v. Peru State College*, the Eighth Circuit was presented with a claim for damages for employment discrimination under Title IX, but the court again did not directly address the issue because the claim was dismissed on the grounds that the employee did not work for a federally funded program. 781 F.2d at 642 (finding federal funds went to academic programs rather than physical educational programs for which the coach worked).

Several district courts in the Eighth Circuit have directly addressed this issue.  In three of these cases, the district courts joined the Fifth and Seventh Circuits in concluding that Title VII preempts Title IX in providing a private cause of action for victims of employment discrimination. *See Sterling Capone v. Univ. of Ark.*, Case No. 5:15-CV-5219, 2016 WL 3455385, at *4 (W.D. Ark. June 20, 2016) (holding that Title IX does not provide a private right of action for victims of employment discrimination); *Vandiver v. Little Rock School Dist.*, Case No. 4:03-CV-00834, 2007 WL 2973463, at *11-12 (E.D. Ark. Oct. 9, 2007) (finding that recognizing a private right of action under Title IX for employment discrimination fails to consider the existence of Title VII remedies for such allegations and "that *Jackson* should not be read to expand private rights of action under Title IX to include claims of employment discrimination which have no connection to the rights

of students . . . ."); *Cooper v. Gustavus Adolphus Coll.*, 957 F. Supp 191, 193 (D. Minn. 1997) (same). In *Vandiver*, Judge Eisele, held that a private right of action under Title IX did not exist for an employee claiming sexual harassment against another employee, concluding that the court was not persuaded that "Congress intended that Title IX offer a bypass of the remedial process of Title VII." *Id.* at *15 (quoting *Lakoski*, 66 F.3d at 754). Additionally, in *Vandiver*, the court held that *Jackson* should not be read to expand private rights of action under Title IX of retaliation to include claims of employment discrimination which have no connection to the rights of students. *Vandiver*, 2007 WL 2973463, at *18 (reasoning that all seminal Supreme Court cases regarding Title IX private rights of action relate to claims by students against funding recipients).

Two district courts in the Eighth Circuit have recognized a private right of action under certain circumstances in an employment setting. In *Gordon v. Board of Trustees of the University of Arkansas*, 168 F. Supp. 3d 1148, 1160-61 (E.D. Ark. 2016), plaintiff Cole Gordon, a former assistant baseball coach for the University, alleged that he reported a fellow employee's purported sexual harassment of students to University human resources, among others, and was retaliated against for his opposition to conduct prohibited by Title IX. The district court concluded that Mr. Gordon failed to allege facts showing that he engaged in conduct protected by Title IX and, therefore, dismissed his Title IX retaliation claim. *Id.*

In *Kelley v. Iowa State University of Science and Technology*, a Title IX coordinator was terminated by her employer, a university, and she brought Title VII and Title IX claims against the university. 311 F. Supp. 3d at 1057. For her Title IX claim, plaintiff Robinette Kelley alleged that the university diverted students from her office, removed her decision-making authority, and ignored her recommendations, resulting in "male perpetrators of sexual and domestic violence [being] given disproportionate protections in the Title IX investigation process and given *more*

8

*than* equal benefits and opportunities in educational programs and activities while female victims were given *less than* equal benefits and opportunities." *Id*. (alterations and emphasis in original). She also alleged that she lodged complaints with the university regarding these issues claiming that the university maintained policies contrary to Title IX and, in retaliation for her complaints, she was fired resulting in unlawful retaliation against her in violation of Title IX. *Id*. The *Kelley* court found that Title VII did not preempt Ms. Kelley's Title IX claim. *Id*. at 1066.

Based upon its review of controlling and persuasive legal authorities and the facts of this case, the Court determines that, consistent with these authorities, Ms. Hedrick does not have a private right of action under Title IX for a claim of employment-related sex discrimination and retaliation against UAMS. The facts of this case are more like the facts presented in *Vandiver* and *Sterling Capone*. Ms. Hedrick's complaint alleges that she and Dr. Sasapu were both employees of UAMS during all relevant time periods. Ms. Hedrick, as an employee, alleges sex discrimination through alleged sexual harassment behavior of Dr. Sasapu, another UAMS employee with whom she interacted as a patient examined and treated by Dr. Sasapu for a period of time, and retaliation by UAMS in the form of constructive discharge after Ms. Hedrick complained of Dr. Sasapu's alleged conduct. Like Judge Eisele in *Vandiver*, this Court is not persuaded that "Congress intended that Title IX offer a bypass of the remedial process of Title VII" and determines, given the Supreme Court's seminal cases regarding Title IX private rights of action, that precedents "should not be read to expand private rights of action under Title IX to include claims of employment discrimination which have no connection to the rights of students . . . ." 2007 WL 2973463, at *15 (citations omitted).

Here, Ms. Hedrick's Title IX claims have no connection to the rights of students. The facts of this case are different from the allegations in *Gordon* and *Kelley*. Given these differences, the

9

Court concludes that Ms. Hedrick does not have a private right of action under Title IX to bring her claims of sex discrimination and retaliation against UAMS.

Even if Ms. Hedrick could bring discrimination and retaliation claims under Title IX against UAMS, the Court determines that she fails to allege facts sufficient to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In the employment setting, claims of Title IX discrimination and retaliation are evaluated under the same standards as Title VII claims. *See Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996); *Gordon*, 168 F. Supp. 3d at 1161 (citing *Brine*, 90 F.3d at 273). Among the deficiencies in the allegations in her complaint, although Ms. Hedrick claims constructive discharge, she includes insufficient factual allegations to demonstrate that UAMS forced her to quit through intolerable working conditions. As a result, Ms. Hedrick fails to allege sufficiently an adverse employment action and, therefore, fails to allege a discrimination or retaliation claim upon which relief can be granted.

For these reasons, the Court concludes that Ms. Hedrick fails to state Title IX claims against UAMS upon which relief may be granted. The Court grants UAMS's motion to dismiss and dismisses without prejudice Ms. Hedrick's claims against UAMS (Dkt. No. 8).

### III. State Law Claim

The Court declines to exercise supplemental jurisdiction over Ms. Hedrick's remaining state law outrage claim against Dr. Sasapu, and the Court dismisses without prejudice that claim. The period of limitations for the state law outrage claim is tolled consistent with 28 U.S.C. § 1367(d), which providers that "[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

## IV. Conclusion

For the reasons stated above, the Court grants UAMS's motion to dismiss (Dkt. No. 8).  As the Court has dismissed without prejudice all of Ms. Hedrick's claims, the Court dismisses without prejudice Ms. Hedrick's complaint (Dkt. No. 1).

So ordered this the 5th day of September 2019.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge